HUGHES v. THE MISSISSIPPI & MISSOURI RAILROAD COMPANY.

*Appeal from Scott District Court.*

THURSDAY, OCTOBER 17.

*Cook & Drury* for the appellant.

The facts are, that in 1841, the town (now city) of Davenport was laid out; certain streets, alleys and public grounds were laid down on the map, and the map recorded in recorder's office of the county of Scott. There is a street known on the map as Fifth street. In 1856, the Mississippi & Missouri Railroad Company laid down their main track, with side-tracks and switches, through this Fifth street. Before doing so, the city authorities of Davenport, by ordinance duly passed, gave the Railroad Company authority to lay down their main track, with necessary turn-outs, side-tracks and switches, on and along said Fifth street. The owners of some of the lots fronting on Fifth street now claim the fee of the streets to the centre of the same, and seek to enjoin the Railroad Company from occupying the same.

We shall submit two points and direct the attention of the court to them:

1st. That under the statute law in force in the State of

Iowa, at the time of the laying out of the City of Davenport, the streets of the city passed in fee to the city, and under this point we shall show that the uniform ruling of the courts has been, that owners of lots did not own to the centre of the street, and that the city authorities could authorize any person or company to use them, if not inconsistent with the ordinary use by the public; and that laying down a Railroad track is one of the uses that may be authorized.

2d. We shall claim that owners of lots can only hold the naked lot, that is, the number of feet in breadth and depth, as described on the map, and if the fee did not pass to the city, it remained in the original owner.

In the Revised Statutes of Iowa for 1842 and 1843 will be found an act passed by the Council and House of Representatives, approved January 25th, 1839.   The fifth section is the one to which we wish more particularly to direct the attention of the court, as bearing directly on the point now being considered.   It reads as follows :

" When the plat or map shall have been made out and " certified, acknowledged and recorded as required by this " act, every donation or grant to the public, or to any indi-" vidual or individuals, religious society or societies, or to " any corporation or body politic, marked or noted as such " on said map or plat, shall be deemed in law and in equity " a sufficient conveyance to vest the fee simple of all such " parcel or parcels of land, as are therein expressed, and " shall be considered to all intents and purposes a general " warranty against such donor or donors, grantee or grantees " for his, her, or their use, for the uses and purposes therein " named, expressed and intended to be for the streets, alleys, " ways, commons, or other public uses, in any town or city, " or addition thereto, shall be held in the corporate name " thereof, in trust to, and for the uses and purposes set " forth, expressed or intended."

The Code of 1851, p. 103, § 637, provides: "The acknowledgement and recording of such plat is equivalent to a deed in fee simple of such portion of the land as is therein set apart for public use, or is dedicated to charitable, religious or educational purposes."

The old Michigan laws, which were in force by act of Congress in the territory of Iowa, for a time, contains an act to provide for the recording of town plats, and for other purposes, approved April 12th, 1827. Section 2, provides that, "When the plat or map is recorded, it shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended to be for public uses, in the county in which such town lies, in trust for the purposes named."

We have thus referred the court to all the statutory enactments on this subject, from April 12th, 1827, to the present time, and the town of Davenport was certainly laid out under one of them; and for the purposes of this case, it is quite immaterial which, as they all concur on one point; that is, that the fee simple title to the streets pass from the person laying out and recording the town plat. The acts do not all agree as to the party to whom the fee passes, but the legal effect of all of them is to pass it from the town proprietor for public uses.

Now we submit this legal proposition: That the fee in land can not be in two different persons, holding adversely at the same time.

If the fee simple title passed from the proprietor of the town, by the act of recording, then it necessarily follows, that it did not pass by his deed of a lot to the grantee of the lot. If it could, it would present this curious anomaly in passing titles; that the same grantor could convey the fee of land by one deed to one person, and by another deed to another person.

Purple's edition of the Revised Statues of Illinois, p. 176, § 21, provides:

"The plat or map, when made out, certified, acknowledged and recorded as required by this act, and every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or bodies politic, marked or noted as such on said plat or map, shall be deemed in law and in equity a sufficient conveyance to vest the fee simple of all such parcel or parcels of land, as are therein expressed, and shall be considered to all intents and purposes as a general warranty against such donor or donors, their heirs and representatives, to the said donee or donees, grantee or grantees, for his, her, or their use, for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever. And the land intended to be for streets, alleys, ways, commons or other public uses, in any town or city or addition thereto, shall be held in the corporate name thereof, in trust to and for the uses and purposes set forth and expressed or intended."

This section came under review for construction in the case of *The Board of Trustees of the Illinois & Michigan Canal* v. *Philo A. Haven & Orlando Haven*, 11 Ill. R. 554. The court says : "Under this statute the legal title to the land embraced by a street is vested in the corporation of the town or city, for the use and benefit of the public." * * * * * "It is not in the power of the proprietor of the lots to transfer the fee in the street to his grantee. The acknowledgment and recording of the plat has all the force and effect of any express grant ; on the recording of the plat the fee in the streets *eo instante* passes to the corporation." * * * * * * * * "A purchaser only acquires a title to the land included within the actual limits of the lot as designated on the plat. He takes no interest in the street, except in common with the public, the right of passage over it."

The question again came before the Supreme Court of

Illinois in the case of *Hunter* v. *Middleton*, 13 Ill. 50. The court here, re-affirms the decision in the 11th Illinois, giving some additional reasons and then distinguishes it from the case of an ordinary highway. "In the case of an ordinary public highway, the fee remains in the proprietor of the land, and the public have only an easement over it; but the statute in relation to recording plats and maps of towns and cities, establishes a different principle as to the fee of the streets in towns and cities."

Again, in the case of *Moses* v. *The Pittsburgh, Fort Wayne & Chicago Railroad Company*, 21 Ill. 516, this question was decided, and not only the question of the fee of the streets, but all the questions that are before the court in this case. They decide first, that the fee of the streets is in the city; and second, that the city council have authority to allow railroads to run through the streets of the city. In the conclusion of the opinion, the whole difficulty in relation to this question is solved, and the many apparently conflicting decisions explained. "In those States where the public only have an easement in the street, and the owner of the adjoining property holds the fee of the street, it has been held that the city authorities had not the power to grant a railroad company the right to lay down its rails. But where the fee of the streets is in the city, it has uniformly been held that the city had the power."

The case of *Seventeenth street*, 1 Wend. 262, is decisive on both points that we make, and we consider it more directly in point, because in that case there was a legislative act in relation to the fee of the street, the same in effect as there is in this State as to the fee of the streets in cities. The court decided in that case that the fee in the streets do not pass to the purchaser of lots, but remains in the former owner until the report of commissioners of estimate and assessment shall be confirmed by the court. They further decide, and in support of our second point, that a convey-

ance of a lot bounded by a street does not convey to the purchaser the fee to middle of the street.

See also on this point *Case of Lewis street*, 2 Wend. 472, in which case, the Mercer street case, in 4 Cow. 542, is reviewed and reversed. 8 Wend. 85, *Livingston* v. *Mayor of New York*.

The case of *Drake* v. *The Hudson River Railroad Company*, 7 Barb. 508, is a leading case on this subject and one that was well considered and covers the points we take.

As to the power of the Legislature to pass a law vesting the fee of streets and all highways in the public, see *Stackpole* v. *Healy*, 16 Mass. 38.

*Grant* for the appellee.

LOWE, C. J.—An application for an injunction under the same circumstances and involving no other questions of law than the case of *Milburn et al.* v. *The City of Cedar Rapids and The Chicago, Iowa and Nebraska Rail Road Company*, *ante*, upon the authority of which, and for the reasons therein stated, the judgment below in this case will be reversed and the bill dismissed at cost of appellee.

Reversed.