M. WHEELER, Appellant, v. THE CITY OF FORT DODGE, Appellee.

**Streets:** OVERHEAD OBSTRUCTIONS: NUISANCE: LIABILITY OF CITY. The public right in a street extends to its full width and indefinitely upward so that an overhead structure of a character dangerous to a person rightfully using the street is a nuisance and the municipality is liable for injuries resulting therefrom.

**Same:** The right to interrupt the public use of a street must rest upon some public convenience or necessity, or in the reasonable enjoyment of the use of adjacent property.

**Same.** Municipalities are clothed with statutory power to regulate and control the use of streets and all public grounds, and it is made their duty to keep them free from nuisances, for a violation of which duty an individual suffering injury therefrom may recover damages.

**Same:** NEGLIGENCE OF CITY. A city permitting the erection of a street obstruction, having no relation to the use for which a public way is designed, is chargeable with notice of the nuisance and in legal effect is the creator thereof the same as though the obstruction was of its own making.

**Proximate cause.** Where the evidence is not clear or undisputed on the question of the proximate cause of an injury it becomes an issue of fact for the jury.

**Same.** Where a city permitted the erection of a nuisance consisting in stringing a wire from the roof of a building to a post near the ground at the opposite side of the street, down which a performer was to slide, and in making the slide the fastenings or harness holding the performer to the wire broke and she fell injuring one lawfully upon the street, the breaking of the harness was a concurrent and not an independent cause of the injury.

**Contributory negligence.** The question of contributory negligence is ordinarily for the jury.

*Appeal from Webster District Court.*— Hon. J. R. Whitaker, Judge.

Wednesday, September 26, 1906.

The opinion states the case.— *Reversed.*

*Kenyon & O'Connor, Wright & Nugent,* and *J. B. McCrary,* for appellant.

*Mitchell & Hackler* and *Healy Bros. & Kelleher,* for appellee.

Weaver, J.— The petition alleges that, with the consent and by the order and authority of the defendant city, one of its principal streets was on July 4, 1903, obstructed by a wire stretched from the roof of the courthouse bordering upon said street and drawn across the traveled street to a post or fastening near the ground on the opposite side of said street. It is further alleged that said wire was so stretched and prepared to facilitate the purpose of a female acrobat or performer of dangerous feats to slide down said wire from the courthouse roof to the ground below while " hanging by her teeth," which purpose was publicly advertised and well known to the city and its officers, who in violation of their statutory duty to keep the streets free from obstructions to travel, not only neglected and failed to prevent the erection and use of such nuisance, but failed and neglected to cause the same to be removed and permitted the same to remain and be put to its designated use to the manifest peril of all persons lawfully using said public way. It is further alleged that as the plaintiff, having no knowledge or notice of the existence of said nuisance, was passing along said street, as he lawfully might, the acrobat or per-

former, undertaking to make the advertised " slide for life," fell from the wire so obstructing the street as aforesaid striking the person of the plaintiff with great force and causing him serious and permanent injury without fault or negligence on his part. For the injuries thus received a recovery in. damages is demanded. The defendant denies the allegations of the petition.

The testimony, without substantial controversy, tends to show that, preparatory to a celebration of the national anniversary, the city council of Ft. Dodge by formal resolution granted to an organization known as the " Commercial Club," " the privilege of the streets for a fourth of July celebration, . . . the privilege of selling privileges for booths and entertainments such as they may see fit to permit with the concurrence of the mayor of the city, and the sole right to collect and appropriate all revenues derived therefrom to defray the expenses attendant upon such celebration; that they be granted the privilege of discharging fireworks for an evening display; and that said government appoint such special police as it may deem necessary to preserve order."

Pursuant to this authority, and in furtherance of the general purposes of the celebration, the Commercial Club procured or permitted one De Etta to come to Ft. Dodge with the exhibition referred to in the petition. His coming and the proposed " slide for life " by a young woman under his management were advertised as one of the attractions of the day. The wire on which the slide was to be executed was put up early in the morning of the celebration or during the evening prior thereto, stretching from the roof of the courthouse, which stands flush with the public sidewalk, downward and outward in a diagonal course across the street known as Central avenue, and some distance into a cross-street known as Seventh street, ending at a telephone pole to which it was fastened near the ground. That the street was to be thus occupied was a matter of very general

knowledge, and the apparatus as thus erected was seen by
various members of the council and other city officers early
in the morning and before any attempt was made to use it.
That its existence and purpose were at all times known to
the city is beyond the shadow of a doubt, and that the city
by its officers and representatives undertook so far as possible
to authorize and approve this use of the streets is equally
beyond question.   As the crowd gathered, police officers
paraded the street under the rope attempting to keep the
carriage way clear; but there is evidence that no attempt
was made by the city or its officers to rope off that part of
the sidewalk beneath the slide, nor was the public excluded
therefrom.   In order to make the slide, and give the per-
former the appearance of " hanging by her teeth," a belt or
harness of some kind was placed about her body and con-
cealed by her clothing, and from this a strap was attached
to a ring or pulley running loose along the wire.   With the
bulk of her weight thus suspended, and the end of another
strap depending from the ring or pulley on the wire placed
in her mouth, she was to slide outward from the roof down
across the street into a net prepared to receive her at the
telephone pole.   At the advertised hour a large crowd had
assembled, filling the sidewalk under the rope and all other
available space in that vicinity.   By reason of some defect
or weakness in the harness worn by the performer she had
scarcely started on her perilous feat when she fell a distance
of some 70 feet to the sidewalk below, receiving fatal injury
to herself and striking and injuring the plaintiff.

The testimony tends to show that the plaintiff was a
laborer.   He did not take any of the local papers, and,
while he knew that a celebration was in progress, he did not
know of the proposed slide for life.   With his wife he came
along the sidewalk in front of the courthouse, making his
way with or through the crowd there gathering.   Pausing a
while for his wife to rest herself, he stood at the outer edge
of the walk to look about him, and in this position was struck

and injured as already related.   At the close of the testimony from which we have already said the jury would have been justified in finding the truth of the foregoing statement of facts, the court sustained the motion of the defendant to direct a verdict in its favor.   From the judgment entered upon said directed verdict, the plaintiff appeals.

I. A principal ground of the motion to direct a verdict for the appellee, and one of the chief propositions upon which its argument in this court is bottomed, is the. assumption that the apparatus stretched over and across Central avenue and Seventh street for performance of the " slide for life " was not an obstruction to, or encroachment upon, the public way, and was not in any sense a nuisance.   With this contention we cannot agree.   The fact that the wire in most of its course passed through the air above the heads of the people using the walks and carriageway below does not remove its character as an obstruction of the street.   The public right goes to the full width of the street and extends indefinitely upward and downward so far at least as to prohibit encroachment upon said limits by any person by any means by which the enjoyment of said public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous.   The principle here stated has been upheld in a multitude of cases, of which we need only to call attention to the following:   In *Bohen v. Waseca,* 32 Minn. 176 (19 N. W. 730, 50 Am. Rep. 564) the city was held liable for injury occasioned to a traveler on the sidewalk by the fall of an awning which projected into the street space from an abutting building. The court there well says:   " There is no sound reason why the duty of a municipal corporation to keep its streets in a safe condition should not require it to take reasonable precautions against dangers from overhead as well as under foot."   See, to the same effect, *Hume v. Mayor,* 74 N. Y.

1. STREETS:
   overhead
   obstruction:
   nuisance:
   liability of
   city.

264, and *Drake v. Lowell,* 13 Metc. (Mass.) 292. A bridge or covered viaduct erected between the upper stories of buildings on opposite sides of a street for the convenience of the business of the owner of said buildings has been declared an obstruction to the street constituting a nuisance, although it effected no physical obstruction or obstacle to the use of the roadway below. *Bybee v. State,* 94 Ind. 443 (48 Am. Rep. 175). It has also been held that a rope stretched across the street was a nuisance, and a person injured thereby was entitled to recover from the city which negligently permitted it. *French v. Brunswick,* 21 Me. 29 (38 Am. Dec. 250). A similar rule has been applied to an injury to a traveler by a falling limb from an overhanging tree. *Jones v. New Haven,* 34 Conn. 1. Also an injury caused by the falling of a pole which citizens had been permitted to erect in the street. It was there said to be immaterial that the pole was set in a place or position where it did not actually obstruct travel. *Norristown v. Moyer,* 67 Pa. 355. A bay window projecting into the street space from the upper story of an abutting building is held by the Pennsylvania court to be a nuisance which cannot be justified or maintained even by an express ordinance of the city. *Reimer's Appeal,* 100 Pa. 182 (45 Am. Rep. 373). The maintenance of a dangerous boiler or heating apparatus in an area way under a public street is a nuisance for the existence of which the city may be held responsible. *Beall v. Seattle,* 28 Wash. 593 (69 Pac. 12, 61 L. R. A. 583, 92 Am. St. Rep. 892). See, also, *Abilene v. Cowperthwait,* 52 Kan. 324 (34 Pac. 795); *Smith v. Leavenworth,* 15 Kan. 81; *Woodbury v. Dist. of Col.,* 5 Mackey (D. C.) 127.

That the city may be held liable for permitting condititons which endanger travelers, but do not constitute any defect in the street surface or obstruct travel thereon, has been expressly held by this court. For instance, in *Stanley v. Davenport,* 54 Iowa, 463, the use on the street of a steam motor the appearance of which was calculated to frighten

horses, although such use had been authorized by ordinance, was held to be a nuisance for which the city was liable. In *Duffy v. Dubuque*, 63 Iowa, 171, the city was held charge-able with neglect in permitting a section from the roof of an old building to stand on edge near a sidewalk, but not in the street where it was likely to fall on travelers using the public way. To the same effect, see *Bliven v. Sioux City*, 85 Iowa, 351, and *Cason v. Ottumwa*, 102 Iowa, 99. In each of the latter cases the city was held liable for injuries occasioned by the fall of a billboard standing on end near the sidewalk. In the Bliven case it is true that the plaintiff was not permitted to recover because of failure to serve proper notice; but the rule which holds the city liable for negligence of this character was affirmed, and a danger-ous condition thus created was held to be a " defect " in the street within the meaning of the law. We there said:

It is the duty of the city to keep its streets open and in repair and free from nuisance. It is also its duty to main-tain its sidewalks in a reasonably safe condition. This duty extends, not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk properly. It may not be the duty of a city to open to public travel a given street to its full width, and it may not be its duty to con-struct a sidewalk thereon; but, when it has assumed that obligation, it should make the street and walk reasonably safe for the uses for which they are intended. A defect is defined to be " a want or absence of something necessary for completeness or perfection." Webster's Dictionary. It also includes the idea of a fault or want of perfection. In the statutory sense a street or sidewalk is defective when it is not in a reasonably safe condition for the use for which it is intended. That condition may be due to improper con-struction, to poor material, or to other causes. It may be due to the presence of something which is a menace to the safety of users of the way, as well as to imperfect construc-tion or the absence of needed labor or material.

If we are not to abandon this principle so just and reasonable in itself, there is no escape from the conclusion that the presence in the streets of defendant city of the apparatus erected for the so-called "slide for life" was a nuisance.

But, even if for any purpose or in any exceptional sense of the word the existence of the naked wire stretched across the public way can be said not to constitute a nuisance, yet when it is considered, as it should be considered, with reference to the purpose of its erection and the use to which it was to be subjected, its unlawful character is placed beyond a reasonable doubt.   There are various reasonable and proper uses to which a street may be temporarily put, which may for the time being obstruct or interrupt its public use.   But the right to make or cause such interruption must have some foundation in the necessity or in the reasonable enjoyment of the use of adjacent property.   *Callanan v. Gilman,* 107 N. Y. 360 (14 N. E. 267, 1 Am. St. Rep. 831).   For instance, an adjacent owner may temporarily deposit building materials in the street, or unload wood, coal, or merchandise thereon to be carried into his building.   He may within reasonable limits temporarily obstruct travel by his teams and wagons while loading or unloading goods.   Possibly (though we need not here decide) a city may temporarily exclude general travel from a properly designated and guarded portion of a street or streets for the accommodation of a procession, parade, or display having some reasonable relation to the purposes for which streets are created.   The case at bar cannot be brought within the rule or the reason of any of these exceptions.   The "slide for life" had no excuse on the score of necessity or convenience either to the general public or the ajacent property owners.   It served no useful public purpose.   It had its origin in knowledge of the fact that an exhibition of a highly perilous character is a sure device to excite public attention and draw a crowd of

2. SAME.

spectators. That it was a source of imminent danger, not only to the reckless performer, but to those over whose heads the slide was to be made, was perfectly obvious to all who saw the apparatus and knew the purpose of its construction. The existence of such a source of public danger has all the elements of nuisance. Even a structure which may have some reasonable justification in the convenience of the business or occupation of an adjacent owner may be a nuisance for which the city will be held liable, if the use made of it be such as to be a manifest source of danger to travelers. Such was our holding in *Parmenter v. Marion,* 113 Iowa, 297. While the city was there held not liable for the act of the property owner in throwing a bale of hay from the platform, we further said: " Had it [the platform] been used as a place for storing bales of hay that were liable to fall off and injure the public by reason of its being narrower than the sidewalk below, and this condition were known to the city, or ought to have been known in the exercise of reasonable care and diligence, there would have been liability on part of the city." In other words, if the known use of the structure or thing existing in the street is of a character which is manifestly dangerous to persons lawfully using the street, it is a nuisance for which the city is to be held liable. Directly in point is *City Council v. Reynolds,* 122 Ga. 745 (50 S. E. 998, 69 L. R. A. 564, 106 Am. St. Rep. 147).

II. A principal part of the arguments of counsel is devoted to the discussion of the general doctrine of a city's liability for the misfeasance and nonfeasance of its officers.

**3. SAME.**    Much learning has been employed in some of the cases referred to in attempting to distinguish between acts done by a municipality in its governmental capacity for which no liability exists and those done in its private or corporate capacity for which there is liability. In the opinion of the writer this distinction is largely a mere play upon words and without substantial value in tracing the line between municipal liability and

nonliability; but it is not necessary in the present case that we should enter upon that discussion. Our statute provides that cities " shall have power to prevent injury or annoyance from anything dangerous, offensive, or unhealthy and to cause any nuisance to be abated." Code, section 696. They are also given power to regulate license or prohibit shows and exhibitions of all kinds. Code, section 703. They are also expressly vested with the " care, supervision and control of all public highways, streets, avenues, alleys, public squares and commons within the city *and shall cause the same to be kept open and in repair and free from nuisances.*" Code, section 753. Few states have statutes so fully and completely creating this power and responsibility. The duty to keep the streets free from nuisances is no less broad and imperative than is the duty to keep the surface of the street in repair, and, for failure to perform this statutory duty, whatever may be the rule of liability and nonliability at common law, this court, in common with the courts of many other states, is committed to the doctrine that the city is chargeable in damages to persons thereby injured. The doctrine is that the vesting of this power carries with it the affirmative duty or obligation to keep and maintain the public ways in reasonably safe condition and free from nuisances, and that for a violation of this duty an individual suffering injury therefrom may recover damages. *Rowell v. Williams,* 29 Iowa, 210; *Rusch v. Davenport,* 6 Iowa, 443; *Brown v. Jefferson Co.,* 16 Iowa, 339; *Soper v. Henry Co.,* 26 Iowa, 264; *Stanley v. Davenport,* 54 Iowa, 463; *Barnes v. Dist. of Col.,* 91 U. S. 540 (23 L. Ed. 440); *Cleveland v. King,* 132 U. S. 295 (10 Sup. Ct. 90, 33 L. Ed. 334). And see cases cited in note to *Goddard v. Inhabitants of Harpswell,* 30 Am. St. Rep. 385.

In the Barnes case, *supra,* the Supreme Court of the United States says: " The statute gives to municipal corporations the care, supervision, and control of all public

highways, and requires that the same shall be kept open and in repair and free from nuisance. In effect it is a requirement that the corporation shall prevent all nuisances therein, and when, by allowing a street to become so out of repair as to be dangerous, the corporation itself maintains a nuisance, a suit to recover injuries thereby occasioned is for damages arising from a nuisance. The statute does not give a remedy, but enjoins a duty. And when a duty to keep streets in repair is enjoined on municipal corporations either by statute in the form now in force or by a provision which authorizes them to pass ordinances for regulating streets and keeping them in repair, and gives power to levy taxes for that purpose, and presumably to maintain a fund for satisfying claims for damages, a right of action for damages caused by such neglect arises at common law." In the Cleveland case, *supra*, this language from the Barnes case was quoted and reaffirmed, and it was held that, even where the city had properly granted private parties the right to temporarily obstruct a street, it was still its duty to use reasonable diligence to see that the licensees did not exercise their privilege in such a way as to endanger passers-by in the use of the public way. Tested even by the supposed distinction drawn between municipal acts which are purely governmental in their nature and those which are merely ministerial or administrative, or pertain more especially to private and corporate rights and duties, the care and maintenance of the safety of the streets falls within the later class. See statement of the rule made in *Wagner v. Portland,* 40 Or. 389 (60 Pac. 985, 67 Pac. 300); *White Lead Co. v. Rochester,* 3 N. Y. 463 (53 Am. Dec. 316); *Gibson v. Huntington,* 38 W. Va. 177 (18 S. E. 447, 22 L. R. A. 561, 45 Am. St. Rep. 853); *Saulsbury v. Ithaca,* 94 N. Y. 27 (46 Am. Rep. 122); *Vaughtman v. Waterloo,* 14 Ind. App. 649 (43 N. E. 476).

III. Holding, as we do, that the apparatus erected in the street for the so-called " slide for life " was a nuisance,

we have next to inquire whether the evidence was sufficient to justify a jury in finding the defendant city negligent in reference thereto. The affirmative of this proposition is too clear to justify discussion. It would be childish, in the face of the record before us, to argue or to suggest the existence of doubt that the responsible officers and representatives of the city were at all times fully aware of the erection, existence, and proposed use of the apparatus within the limits of the street. It would be equally idle to deny that by its attempted cession of power to the club having charge of the celebration it undertook to give to this and other acts of the club the semblance of regularity and authority. The permission thus impliedly or expressly given, by which the city for the time being undertook to suspend or withhold the exercise of its statutory duty to keep its streets " open and free from nuisance," and allow them to be converted into a stage or theater for a dangerous performance having no relation to the use for which a public way is designed, it became not only chargeable with notice of the nuisance the moment of its erection, but became in legal effect the creator of the nuisance substantially the same as if the structure were one of its own making. This is clearly settled in our decision of *Stanley v. Davenport,* 54 Iowa, 467. In that case the city, acting in excess of its authority, undertook to permit the operation of a steam motor upon a public street. In defense to an action for damages by a person thereby injured, the corporation sought to escape liability and avoid the charge of negligence on the ground that the act of its council and officers in excess of their authority was a matter for which they might be liable individually, but constituted no ground of action against the municipality. To this contention we replied: " The city has jurisdiction of the subject-matter — that is, of the streets — and could only act in relation thereto through its council. The latter had control of the streets of the city, but were mistaken as to

*4. SAME: negligence of city.*

the extent of their authority. The particular thing the council authorized to be done was illegal, and we think the city is responsible for the consequences resulting therefrom." We further said: "If such power did not exist, the permission given could well be styled negligence for which the city should be held responsible. Unless the city can shield itself by reason of its authority in the premises, the permission to use the motor on the street constituted negligence."

The same principle was recognized and applied in *Freeland v. Muscatine,* 9 Iowa, 464. Were the act complained of an assumption of power or authority by the city or its council with reference to some matter not committed to its jurisdiction, and concerning which it was charged with no duty or obligation, it may be that no municipal liability would arise therefrom; but the care and control of its streets is peculiarly a business or duty committed to its keeping, and it cannot excuse its own act in creating or permitting a nuisance therein by saying that such act was *ultra vires.* Directly in point is the decision of the Wisconsin court in *Little v. Madison,* 42 Wis. 643 (24 Am. Rep. 435). In the cited case the city officers authorized an exhibition of wild animals in the street. The plaintiff's horse, being frightened by the animals, ran away and for injuries thus occasioned he was held to have a right of action against the city. So, also, is the case of *Richmond v. Smith,* 101 Va. 161 (43 S. E. 346). There the city, acting by its council, assumed to permit certain streets to be occupied by structures of various kinds for the use of a so-called "Street Fair." As a part of the entertainment, and in keeping with the character of these exhibitions in general, a "cake-walk" was performed upon a platform which had been placed in the street for that purpose and surrounded by a railing. The crowd gathered to view the classic performance, filled the sidewalk and pressed against the railing which broke, causing an injury to the plaintiff. In holding the city liable, the court says: "It was the duty of the city to abate the

nuisance and keep the streets free from obstructions.    Its failure to do this makes it liable.    The sin of permission in granting the permit cannot be less than the sin of omission in failing to discharge its duty."

Not unlike in fact and in principle is the recent case decided by this court (*Farrell v. Dubuque,* 129 Iowa 477, where the city is held chargeable with negligence for permitting the erection of an insecure and dangerous structure in the public way, for street fair purposes.    We there said: " It is clear that, when the city allowed these structures to remain in the street with knowledge that they were unlawfully placed there, and that they were dangerous, it rendered itself liable to any one receiving injuries by reason thereof."    Under the rule of these cases, and of the great weight of authority in general, we regard it clear that the court was in error in holding as a matter of law that no negligence had been shown on the part of the appellee.    Whether or not a given structure in the street obstructs, or may obstruct, the public use or safety, is always under ordinary circumstances a jury question.    *Bybee v. State,* 94 Ind. 443 (48 Am. Rep. 175); *Grove v. Ft. Wayne,* 45 Ind. 429 (15 Am. Rep. 262); *Centerville v. Woods,* 57 Ind. 192; *Logansport v. Dick,* 70 Ind. 65 (36 Am. Rep. 166).

As bearing upon the propositions thus far discussed, see, in addition to authorities already cited, *Grove v. Ft. Wayne,* 45 Ind. 429 (15 Am. Rep. 262); *Hughes v. Fon Du Lac,* 73 Wis. 380 (41 N. W. 408); *Wells v. Brooklyn* (41 N. Y. Supp. 143); Wood on Nuisance, section 472; *Champlin v. Village of Penn Yan,* 34 Hun (N. Y.) 33; *Wilbert v. Sheboygan,* 121 Wis. 518 (99 N. W. 331); 2 Dillon's Mun. Corp. 660, and note; *Arthur v. Cohoes,* 9 N. Y. Supp 160; *Young v. Rothrock,* 121 Iowa, 588; *Langan v. Atchison,* 35 Kan. 318 (11 Pac. 38, 57 Am. Rep. 165); *Hart v. Board,* 57 N. J. Law 90 (29 Atl. 490); *Speir v. Brooklyn,* 139 N. Y. 6 (34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664); *Landau v. N. Y.,* 180 N. Y. 48 (72 N. E. 631); Thomas

on Neg. 996; *Larson v. Grand Forks,* 3 Dak. 307 (19 N. W. 416); Thompson on Negligence, section 1234; *Wynn v. Younkers,* 80 App. Div. 227 (80 N. Y. Supp. 257); *State v. Berdetta,* 73 Ind. 185 (38 Am. Rep. 117); *Baltimore v. Marriot,* 9 Md. 160; *Fort Worth v. Crawford,* 74 Tex. 404 (12 S. W. 52, 15 Am. St. Rep. 840); *Harper v. Milwaukee,* 30 Wis. 365. The authorities cited by appellee are not in point, or announce a doctrine at variance from the law as heretofore upheld by this court. The conclusion as here reached is in no manner inconsistent with the decision in *Ball v. Woodbine,* 61 Iowa, 83, where we held the city not liable for the act of its officers in discharging fireworks or failing to prevent such discharge by which the plaintiff was injured. The essence of the complaint in that case was either the personal misconduct of certain persons who happened to be officers, or the failure of such officers to properly police the city, and for such failure the cases are quite uniform in holding the city not subject to a claim for damages. In the case at bar the cause of action is nuisance created and existing in the streets by the neglect or wrongful act of the city in violation of its express statutory duty to keep its streets open and free from nuisances.

IV. Counsel for appellees say that, in any event, the neglect or wrongful act of the city was not the proximate cause of the plaintiff's injury. This thought is based on the fact, which the evidence tends to show, that the belt or harness by which the performer was fastened to the wire was weak and insufficient for the purpose for which it was designated, causing it to break under her weight and precipitate her into the street. We think this contention is without merit. In the first place, the proximate cause of an injury is ordinarily a question of fact to be determined by the jury, and there was no such clear or undisputed showing in the evidence produced on the trial as would justify the court in assuming to dispose of it as a matter of law.

5. PROXIMATE CAUSE.

In the next place, conceding the truth of the claim that the harness was weak and defective, it is a concurrent cause rather than an independent intervening cause which purges

6. SAME.        the original neglect of its actionable quality. The performance, the use for which the structure was intended, was inherently and glaringly dangerous, and the accident which occurred was such a possible, if not likely result of such use that it was, to say the least, for the jury to pass upon its alleged negligence and the proximate or remote connection between such negligence and the injury. Without taking time to repeat their citation, most of the cases already cited sufficiently bear out this position.

Directly in point upon this proposition is also *Cohen v. Mayor,* 113 N. Y. 532 (21 N. E. 700, 10 Am. St. Rep. 506, 4 L. R. A. 406). There the city, without legal authority to do so, undertook to permit the owner of a wagon to leave it when not in use standing in the street in front of his premises. The licensee, having removed his horse from the wagon, raised the thills to a perpendicular position and tied them there with a small string. While in this position the wagon was jostled by a passing vehicle, and the thills fell, striking and injuring a person passing that way. It was contended, in defense to an action for damages, that as the negligence of the licensee in tying up the thills and the act of the driver of the passing vehicle had intervened between the negligent act of the city and the injury, and as the injury would not have occurred but for these intervening causes, the city could not be held liable. The objection was overruled. The court, after holding the city negligent in licensing the obstruction of the street, says: " But, assuming that the city had no right to issue the permit, it is urged that the act of the defendant was too remote to be regarded as the proximate cause of the damage herein. We do not think so. The act of the defendant was wrongful, and it consisted in setting up an obstruction in the public highway,

and this accident happened because of the obstruction at the point in question. To be sure it may be said that, if the thills had not been negligently tied, they would not have fallen. But that was simply the way in which by reason of the presence of the obstruction the accident occurred. . . . The difficulty here does not alone consist of the negligent manner of fastening up the thills, but the license itself, the permission with or without consideration to obstruct the street at all for any such purpose or as was the case here, is the wrongful act on part of the defendant which renders it responsible for the damage naturally sustained from such obstruction." See, also, *Abilene v. Cowperthwait,* 52 Kan. 324 (34 Pac. 795); *Hayes v. West Bay,* 91 Mich. 418 (51 N. W. 1067); *Russell v. Columbia,* 74 Mo. 480 (41 Am. Rep. 325); *Taylor v. Cumberland,* 64 Md. 68 (20 Atl. 1027, 54 Am. Rep. 759); *Ouverson v. Grafton,* 5 N. D. 281 (65 N. W. 676).

It is suggested in argument that the plaintiff ought not to recover because of his contributory negligence. That is a question for the jury alone. If the plaintiff is to be be-

7. CONTRIBU-
TORY NEG-
LIGENCE.

lieved, and his credibility was for the jury to pass upon, he could well be held to have been in the exercise of due care. The trial court erred in directing a verdict for the appellee, and a new trial must be ordered. In closing, it is perhaps not out of order to quote the following opinion in the New York case last above cited: " This is none too severe a liability. It is to be hoped that its enforcement will tend to the discontinuance of a custom of granting permits or licenses to do what is well known the city has no right to authorize or license. Such licenses it is a matter of public notoriety are constantly being granted without any semblance of legal authority, and the licensees are continually acting under them and obstructing the streets to the serious inconvenience and danger of the public. When it is understood that such license had not only no effect in the way of legalizing an obstruction, but simply makes the

city a partner in the maintenance of a public nuisance, such knowledge may tend in some degree to the protection of the public in the lawful use of its own highways."

For the reasons stated the judgment of the district court is *reversed*.