JOHN HELLER, Appellant, v. TOWN OF PORTSMOUTH et al., Appellees.

**MUNICIPAL CORPORATIONS: Streets—Shooting Anvils.** A city or town is not liable for an injury resulting from the shooting of anvils in the public street, even though the presence of the anvils in the street was known to the municipal authorities, and the shooting was acquiesced in by them.

WEAVER, J., dissents.

*Appeal from Shelby District Court.*—J. B. ROCKAFELLOW, Judge.

JUNE 23, 1922.

OPINION ON REHEARING JUNE 22, 1923.

ACTION at law to recover damages for personal injury. The opinion sufficiently states the facts. Judgment for the defendants and plaintiff appeals.—*Affirmed.*

*J. B. Whitney* and *V. H. Byers*, for appellant.

*Edward S. White*, for appellee town of Portsmouth.

DE GRAFF, J.—This action was commenced by plaintiff against the town of Portsmouth, Iowa and other defendants to recover damages for personal injuries caused by the alleged neg-

ligence of the defendants. The trial court submitted the case to the jury as to the defendants Smith and Clark and a verdict was returned in their favor. On motion a directed verdict in favor of the defendants Hammerand and the town of Portsmouth was entered. On appeal to this court the judgments as to all defendants except the town of Portsmouth were affirmed. 188 N. W. 878. The defendant town filed its petition for rehearing which was granted on December 15, 1922. This opinion, therefore, concerns itself only with the liability of the town.

The facts disclose that on November 11, 1918 the town of Portsmouth gave public expression of rejoicing by reason of the suspension of hostilities between the combatants in the World's War. It was Armistice Day, and in common with other cities and towns of this country there was a general indulgence in the use of many noise-making devices that usually mark our popular celebrations of great events.

On prior patriotic occasions the defendant William Hammerand had fired anvils. The method adopted was to place one anvil face downwards in the street so as to expose a square hole in the bottom of the anvil and around and above this hole was placed an iron ring. The hole and ring were then filled with powder, some of which was scattered over the outside surface of the anvil. Another anvil was placed upon the ring and the powder was then fired with an iron rod heated red hot at one end.

On the morning of this day two citizens named Doyle and Olinger, who happened to be town councilmen, requested the assistance of Hammerand in "shooting anvils." To this request he reluctantly complied and proceeded to set the anvils. About this time the mayor appeared on the scene and on being told what was being proposed told them "to go ahead and shoot" and in reply to a question "Where," answered "In the street."

When the powder that Hammerand was using became exhausted he ceased operations leaving the noise-making instrument where it had been used. It was then that the defendants Smith and Clark appeared on the scene and on their own initiative undertook the shooting of the anvils. After a few explosions the iron ring was lost. Thereupon they procured an iron wagon

burr and proceeded to use it until the happening of the accident giving rise to this action.

Powder of a different quality was used by Smith and Clark and after a few explosions, and about twenty minutes after Hammerand had left, the wagon burr burst into pieces one of which struck the plaintiff in the eye causing a serious injury.

Is the defendant town under these circumstances liable for the damages sought to be recovered by the plaintiff? This case does not involve the violation of a town ordinance nor does the evidence disclose that the injury and consequent damages was by virtue of any corporate act of the town. *Ultra vires* is not involved.

It is shown without dispute that in the first instance certain town officers acting as individuals gave their consent to the firing of the anvil on a street of the town. Conceding at the outset that the placement of the anvils in the street constituted an obstruction, this act was not the proximate cause of the injuries and consequent damages alleged by plaintiff.

Had the firing of the anvil on the streets of the town been in contravention of an ordinance, and the officers of the town had knowledge of the illegal act and had permitted them the use of the anvil in the manner charged and a third party was injured the city would not be liable. "A city is no more liable for the consequences of a violation of an ordinance by its mayor or council as individuals than it would be if the illegal act were done by a private citizen." *Ball v. Town of Woodbine,* 61 Iowa 83.

*A fortiori* a city should not be held liable in the absence of an ordinance for the consequences of an act permitted by its mayor, or some of its councilmen when that act would be binding upon them simply as individuals. It may not be claimed that what was said or done by Mayor Monahan or the two councilmen constituted an official act. They happened to be officials—nothing more.

True a city or town is bound to keep its streets free from nuisances. *Shinnick v. City of Marshalltown,* 137 Iowa 72. However, before a city or town is liable for damages the alleged nuisance must be the proximate cause of the damages. The act of the officials of the defendant town in consenting to or

assisting in the shooting of the anvil was not the exercise of their duties or within their jurisdiction as town officers, and was beyond the jurisdiction of the town itself.

The act of firing an anvil is in the same category as the shooting of firecrackers or other fireworks on a public street. The facts in this case bring it squarely within the principle announced in *Ball v. Town of Woodbine*, 61 Iowa 83 and *Remy v. City of Shenandoah*, 184 Iowa 1370. The case of *Wheeler v. City of Fort Dodge*, 131 Iowa 566 is clearly distinguishable from the case at bar, and in commenting on the *Ball* case the opinion states: "The essence of the complaint in that case was either the personal misconduct of certain persons who happened to be officers, or the failure of such officers to properly police the city, and for such failure the cases are quite uniform in holding the city not subject to a claim for damages."

The record does not show or establish that the anvil in question was a nuisance *per se*, or an obstruction to anyone or to anything in the use of the street wherein it was situated. The anvil itself was not a menace. In brief the presence of the anvil in the street was not the proximate cause, but merely a condition. *Parmenter v. City of Marion*, 113 Iowa 297.

The defendant town was not bound to anticipate the negligent act of a third party, and it was the improper handling of the anvil by strangers to the town that proximately caused the injury. If anyone was negligent it was the defendants Clark and Smith, and a jury has said they were not negligent.

Holding as we do that the theory of nonliability applies to this case under the facts we deem it unnecessary to discuss the other points and propositions found in briefs and arguments. Wherefore the judgment entered by the trial court as to all defendants is—*Affirmed.*

PRESTON, C. J., EVANS, STEVENS, and ARTHUR, JJ., concur.

WEAVER, J. (dissenting). The agility with which the majority avoids the sole question in this case, and proceeds to demolish propositions of law for which no one contends, and to set up standards of which neither the courts nor profession ever before heard, entitles the exhibition to high rank in the realm of judicial acrobatics.

No one has for a moment, or at any time, advocated the proposition that an injury sustained by a traveler on the city street is chargeable to the municipality simply because the person through whom the injury is done happens to be the mayor or other corporate officer. But where the statute provides that it shall be the duty of the town to keep its streets free from obstructions, and a case arises where such obstruction is created to the knowledge of the town or of its officers and those who represent it or guard it, then the delinquent town becomes liable for the resulting injury, without regard to the question whether such obstruction was created by an officer or by a private person.

In the case at bar, the town is liable, if at all, not because of the official character of the person creating the obstruction, but because the condition itself was one which it was bound to prevent or remove; and the fact that its officers knew of its existence or helped to create it afforded proof of notice of the condition. Notice to the mayor or other responsible officer was notice to the town; and the duty of the town, acting by its officers, to remove or to guard the obstruction became immediate and imperative.

It is putting it very mildly to say that, at the very least, the question was for the jury. The question so presented bears no more resemblance to the *Woodbine* case or to the *Remy* case than it does to Mr. Dickens's famous precedent of Bullum v. Boatum.

There is but one more feature of the opinion to which I care to refer, and that is the somewhat startling statement that the record does not show that the anvils in the street were a nuisance. The mere statement of the proposition is its sufficient refutation.

In the same connection, it is said, as a matter of law, that the presence of the anvils in the street "was not the proximate cause of the damages,—it was merely a condition." If this be true, it provides a universal defense, applicable to every conceivable instance of street obstruction. What *is* a nuisance, if it be not a "condition" which the law forbids? Remove the "condition" and you abate the nuisance.

So plain is the statute, so universal is the rule that a town

charged with the duty of keeping its streets free from obstruction is liable for damages occasioned by failure to observe that duty, and so unbroken is the line of precedents that the knowledge of or notice to the mayor or council of the existence of any obstruction or condition rendering dangerous the use of a street is notice to the town, and charges it with an active duty to apply the needed remedy, that I regard it a grave misfortune for this court of last resort to go upon record with an opinion of such revolutionary character.

The trial court erred in directing a verdict, and its judgment should be reversed.