WILLIAM ARMSTRONG, Appellee, v. O. G. WAFFLE et al., Defendants; JAMES NEFF et al., Appellants.

No. 40369.

MAY 5, 1931.

Chas. J. Haas and D. H. Smith, for appellants.

Crissman, Linville & Bleakley, for appellee.

GRIMM, J.—In March 1929, O. G. Waffle sold to W. O. Blake the North 60 feet of Lot 8, in Block 30, of the City of Marion, under an installment contract, and Blake entered into the possession thereof. Waffle did not retain or exercise any control over the property after the sale. There was a dwelling house on the lot and Blake and his family occupied it as their residence.

This property is on the west side of 13th Street, which runs north and south, in the City of Marion, and is between 5th and 6th Avenues. Fifth Avenue is south and Sixth Avenue is north, the Avenues running east and west. The C. M. & St. P. Railway tracks run along 6th Avenue. The north line of Blake's lot came to the alley in the middle of the block and was approximately 120 feet from the south line of 6th Avenue. The block between the avenues is about 250 feet long. There was a house south of Blake's on the south half of Lot 8.

Thirteenth Street was paved with brick, the paving being 30 feet wide, between curbs. In front of Blake's house a sidewalk ran north and south, and between the curb and sidewalk there was a parking in which stood some maple trees. There was one tree to the northeast of Blake's house near the north line of his lot, and just south of the middle of the block which he wanted cut and removed. This tree measured about 20½ inches in

diameter, and was a hard maple. The tree stood in the parking some 3 or 4 feet west of the curb, and probably 6 feet from the sidewalk.

On June 4, 1929, Blake contracted with James Neff to cut and remove the tree for the price of $2.00 and the wood, Neff using his own tools and providing his own help. Neff had done work of that kind before, but he did not know whether there were any municipal regulations concerning the cutting of trees, and he and one other party went to the office of C. E. Drummond, who was mayor of the city. Drummond is a dentist, and they found him in his dental office. They told the mayor that Blake wanted the tree cut and removed and that he had engaged James Neff to do the work, and inquired if a permit was necessary. The mayor told them it was all right as far as he was concerned, that he had nothing to do with it. The mayor asked the parties to notify the fire department so they would not make a fire run over that street. As a matter of fact there was no city ordinance in Marion relating to the cutting of trees.

Delbert Neff is about 22 years of age, and was a student at Cornell College at Mt. Vernon. He came home on the evening of June 4, and at his father's request consented to assist him in cutting the tree. On June 5, 1929, James Neff, accompanied by his son, went to Blake's between 7 and 8 o'clock in the morning and went to work. Blake had gone away and did not return until evening. James Neff and his son Delbert did all of the work. After trimming a tree at the south of the one Neff had contracted to fell, they commenced operations on the hard maple. They first sawed off all of the branches to within 3 or 4 feet of the trunk, and cut out the top, using ropes to let the several branches onto the pavement, thus avoiding danger to passers-by. The branches as they were cut off were piled against the curb on the west of the street, leaving the east side clear for travel. After the removal of the branches in this way, a stump some 14 or 15 feet in height remained. Just before the Neffs were ready to saw the tree off, and while they were working with the branches, Joe Armstrong, an uncle of the plaintiff, a drayman by occupation, drove north in a dump wagon. The Neffs finished the work at the branches after Joe Armstrong had passed, and had a man ready who dragged the several branches down the street and out of the way with a team so that the street

was again clear of branches. They then went to work sawing the tree. When they had sawed through so that it was about ready to fall, an automobile came up from the south, and they stopped sawing, but as the car was on the east or right-hand side of the street going north, and out of the range of the tree, if it fell, they gave no warning. But apparently the tree was more nearly ready to fall than they thought. While they waited for the automobile to pass, they saw Joe Armstrong crossing the railroad tracks on 6th Avenue coming south on the right-hand side of the street.

It seems that Joe Armstrong had gone to the home of his nephew Reuben Armstrong, about the middle of the block, on the west side of 13th street, between 6th and 7th Avenues, which was just a block north of where the tree was being cut and on the same side of the street. Then, after remaining some 20 or 30 minutes, he arranged to take Reuben's son, William, the plaintiff, a child of about 3½ years old, home with him. The child sat with Joe in the spring seat of the dump wagon, and Joe was driving the team, at a walk, as he crossed the railroad tracks on 6th Avenue going south.

It is at this point that the first material dispute in the evidence occurs. A synopsis of each contention follows:

Joe Armstrong says that when he crossed the railroad tracks he saw the men sawing on the tree, and that he checked up and brought his team almost to a stop, and just then Neff and his son stopped sawing, and stood up, one on each side of the tree, and that after seeing them stop, he drove on paying no further attention to them. In fact he denies looking at them afterwards, but directed his attention to something farther on down the street. He says he drove on down the middle of the street seeing no signals and hearing no warnings until he got opposite the tree when suddenly it fell across the front of the wagon and crushed him and the child, breaking Joe's leg, and severely injuring the child.

On the other hand, Neff and his son say that they stopped while the automobile passed north, and then saw Joe Armstrong with the child in the wagon just over the railroad tracks on 6th Avenue. James Neff asked his son if the tree was near enough off so that it could be felled before Armstrong got down there. The son answered that it could not, but it could have been done

if they had not waited for the car. Joe Armstrong was driving to the right of the middle of the street. James Neff waved his hand and signaled him to stop. Joe came on. Delbert also signaled. Mrs. Blake who had come out of the house also signaled. Joe came on and Neff shouted to him to stop and waved both arms. Joe grinned, and slapped his horses with the lines, and said "Go on with your sawing," and kept on heedless of the warnings. When he got just opposite the tree it suddenly fell, and the injuries occurred.

The injured boy was immediately given hospital attention.

The charges of negligence, in the petition, against each of the defendants are six in number. The substance of said charges is as follows:

1. In felling the tree without giving warning to the public of their intention to fell the tree.

2. In felling the tree without barring travel on 13th Street, past the location where the tree fell.

3. In felling said tree without warning the plaintiff.

4. In permitting the public, and especially the plaintiff, the use of said street at the time the tree was being felled.

5. "In so cutting said tree that it fell across a public street where the plaintiff was traveling."

6. In failing to station sentinels on said 13th Street, both north and south of the location of the tree.

The defendants answered by general denial. Seventeen errors are relied upon for reversal.

I. At the close of the plaintiff's evidence, and again at the close of all of the evidence, the defendant City of Marion moved for a directed verdict, by a motion containing nine specific grounds. In substance, this motion challenged the right of recovery against the City upon the ground that there was no defect in the street and no negligence on the part of the City, and that Blake and Neff were using the street for a lawful purpose; and if there was any negligence, it was theirs, and that the City was not liable for failure to exercise governmental powers in policing the street; and in any event, the negligence of the City, if any, was not the proximate cause of the injury. Except as to whether any, and if so, what warnings were given Joe Armstrong as he approached the scene of the accident and as to his

conduct in relation thereto, there is no substantial dispute in this record.

There was no ordinance in Marion governing the cutting of trees. It is not claimed that any agent or representative of the defendant City took any active part in the removal of the tree. There is no claim whatever that there was any physical defect in the street. The most that can be said on behalf of the plaintiff's case is that the Mayor of the City was informed that Blake personally, or by his employee, contemplated the cutting of the tree. It may also be said that the Mayor contemplated that for a short time at least, the felled tree across the paved portion of the street would constitute an obstruction concerning which the Fire Department should be warned, presumably so that they would not lose any time in attempting to make a fire run while the tree remained on the street.

The duties of Municipal Corporations in reference to streets is found in Section 5945 of the Code of 1927, which reads as follows:

"They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, *and shall cause the same to be kept open and in repair and free from nuisances.*" (Writer's italics).

The City's liability is restricted to keeping the streets open and in repair and free from nuisances. There is no claim in this case that a nuisance existed. Plainly stated, it is the claim of the plaintiff that the City failed in its duty in not barring travel on the street either by stationing sentinels thereon, or otherwise warning the plaintiff against the danger incident to the felling of the tree.

It is the claim of the defendant City that all such charges pertain to the governmental functions or duties of the City for a breach of which the City is not liable. It is the further contention of the defendant City that the duty of the City relates only to construction, maintenance and repair of the street and that a municipality cannot be held liable for failure to protect citizens against accidents occurring on its streets for reasons other than defects therein or by reason of a nuisance.

We think the appellant City's position is well taken. In Harris v. Des Moines, 202 Iowa 53, this court considered an

action for damages for injury to a child while coasting in the street. The accident arose out of a collision with an automobile. The street where the accident happened had been reserved and set apart for coasting. This court said:

"On the threshold of this case, it is well to observe that we are not dealing with a liability resulting from a defect in the condition of a street. The condition of a street is one thing, and the manner of its use by the public is quite another thing. A municipality does not guarantee its citizens against all casualties incident to humanity, and cannot be called upon to compensate, by way of damages, its inability to protect against all accidents and misfortunes."

The court continues to quote with approval from City of Lafayette v. Timberlake, 88 Indiana 330, as follows:

"The manner in which a highway of a city is used is a different thing from its quality and condition as a street. The construction and maintenance of a street in a safe condition for travel is a corporate duty, and for a breach of such a duty an action will lie, but making and enforcing ordinances regulating the use of streets brings into exercise governmental, and not corporate powers, and the authorities are well agreed that for a failure to exercise legislative, judicial or executive powers of government, there is no liability."

In a note to Douglass v. County Court, 22 A. L. R. 585, (90 W. Va. 47, 110 S. E. 439) the Court said:

"The decided weight of authority is to the effect that the terms 'defects,' 'want of repairs,' etc., as used in statutes rendering counties, towns, or other political divisions liable for damages resulting from such defects, etc., in public streets or highways, relate only to inert objects or structural defects, so that a city or other political division cannot be held liable under such statutes for damages resulting from negligent or unlawful use of such a public way by a moving object."

Numerous citations are appended to this note from various jurisdictions in support of the text.

The duty to keep streets and sidewalks in a reasonably safe condition for travel has been held to relate only to their con-

struction, maintenance and repair, and a municipality cannot be held liable for inability to protect citizens against all accidents occurring in its streets for reasons other than defects therein. 43 C. J. 1009, Section 1793, and cases cited.

This duty has been stated in another way, as follows:

"The improper condition of a street or highway which gives rise to municipal liability therefor must be some inert matter encumbering the highway or some structural defect therein. An improper or unlawful use of the highways by persons, animals, vehicles, engines, or objects, while movable or actually being moved by human will or direction, and neither fixed nor stationary in one position within the highway, does not render a municipality liable." (See Note to Dudley v. Flemingsburg, 1 Ann. Cas. 958, at 960.)

Manifestly this has no application to acts of the municipality through its agents and employees when within the scope of their duties.

Another eminent author has said:

"Generally speaking, it may, perhaps correctly, be said that, *under these statutes,* (fixing corporate liability of towns), a town or city charged with the duty of keeping its highways or streets in repair *performs that duty when the traveled way is without obstruction or structural defects which endanger the safety of travelers, and is sufficiently level and smooth, guarded by railings where necessary, to enable persons, by the exercise of ordinary care, to travel with safety and convenience."* (4 Dillon on Mun. Corp., 5th Ed., Section 1694.) (See, also, Barber v. City of Roxbury, 11 Allen 318 [Mass.].)

In the case at bar, there was no physical defect of the street. Moreover, the owner of the real estate had such an interest in the tree that he had the right to remove it. Kemp v. City of Des Moines, 125 Iowa 640. There was no ordinance in the City of Marion regulating or prohibiting such removal. Undoubtedly the owner of the tree had the right to use the street in any lawful way for the removal of the tree. In a sense, the mere felling of the tree into the street was in principle a no greater use of the street than temporarily obstructing the street with a truck on which the tree might be loaded.

There was a momentary danger from the falling of the tree. So far as the owner of the tree and his agents engaged in felling it are concerned, that operation required care; but assuming for the moment that the defendant City had such notice of the purpose to fell the tree as contended, nevertheless, the city had a right to assume that the owner of the tree and his agents would exercise a proper degree of care to prevent injury to travelers upon the street at the particular moment of the felling of the tree.

In Holmquist v. Construction Company, 169 Iowa 502, the administratrix of a pedestrian who was killed, sued the City of Des Moines and the Construction Company erecting a building on one of the streets in Des Moines for damages.

During the early stages of the construction, a permit had been given to barricade the sidewalk in front of the construction. Later this was removed on order from the Mayor and a new barricade was erected extending about 4½ feet from the sidewalk to the building instead of across the sidewalk. The deceased was injured by a workman falling from the top of the construction, and subsequently died. This court said, p. 515-169 Iowa:

"In determining whether the city had performed its duty under the statute, the duty enjoined upon it by Sec. 753 of the Code, (now Section 5945) must be considered in the light of the right of the landowner to so use the street, in view of such lawful use by the landowner of a portion of the sidewalk and street. The city had the right to assume that the owners of buildings abutting the street, or the construction company, would exercise a proper degree of care to prevent injury to travelers upon the street. Parmenter v. City of Marion, 113 Iowa 297."

In Heller v. Town of Portsmouth, 196 Iowa 104, a case where a person on the street was injured by the firing of anvils in a celebration, the original use of the anvils in the street having been acquiesced in by the city authorities, this court said:

"The defendant town was not bound to anticipate the negligent act of a third party, and it was the improper handling of the anvil by strangers to the town that proximately caused the injury."

In Parmenter v. City of Marion, 113 Iowa 297, the plaintiff

was injured by being struck by a bale of hay, blown from a platform about 8 feet above the sidewalk, extending out from the front of the building near the street and over a portion of the sidewalk. This court said:

"Defendant was not bound to anticipate the negligent act of a third party, and it seems clear to us that there was no negligence in simply permitting the platform to remain in the condition it was in. * * * With proper care on his part (owner of the building) there was no danger to passers-by; and the city, in the absence of notice to the contrary, had the right to assume that he would use that degree of care. Such notice as it had of the use was not sufficient to charge it with knowledge that he was making a nuisance of the place, and was likely to injure travelers."

See also McCarthy v. Munising, 136 Michigan 622; O'Rourke v. City of Sioux Falls, 4 S. Dak. 47; Robinson v. Greenville, 42 Ohio State 625; Marth v. Kingfisher, 22 Okla. 602; Everly v. Adams, 95 Kansas 305.

The case at bar is based generally on the proposition that the City, having notice that the tree was about to be felled, did not exercise its governmental powers in policing that portion of the street where the tree was to fall, or take such other steps as would prevent injury from the felling of the tree. It is thus the claim of the plaintiff that the city was negligent in the performance of one or more of its governmental duties.

It is the established rule in this state that a city is not liable for negligence in the performance of its governmental functions. This is so familiar that a citation of authorities is unnecessary, but see Leckliter v. City of Des Moines, 211 Iowa 251, and cases cited.

This court has frequently said that for injuries resulting from the acts of third parties very similar to the facts in this case, the city was not liable.

In Ball v. Woodbine, 61 Iowa 83, the party was injured by the shooting of fireworks on the street.

In Parmenter v. City of Marion, 113 Iowa 297, a pedestrian was injured by being struck by a bale of hay, blown from a platform.

In Heller v. Town of Portsmouth, 196 Iowa 104, the party

was injured by the shooting of an anvil, in a celebration, in the street.

In Harris v. City of Des Moines, 202 Iowa 53, the injuries were caused by coasting in the street.

In each of these cases, the municipal officers had notice of the conditions and either aided or acquiesced therein. In each case recovery was denied.

This question has been very recently discussed in Reinart v. Incorporated Town of Manning, 210 Iowa 664, in which case this court held in substance that a municipal corporation is not liable to pedestrian for explosion of firecracker on a sidewalk even if officers of the city knew or should have known the street was being used as a place for exploding firecrackers.

See also O'Rourke v. City of Sioux Falls, 4 S. D. 47; Robinson v. Greenville, 42 Ohio St. 625; Addington v. Littleton, Ann. Cas. 1912C 753; Marth v. Kingfisher, 22 Okla. 602; Everly v. Adams, 95 Kansas 305.

As the injury in this case was not caused by any failure to properly construct, maintain or repair the street, but grew out of a use of the street, under the facts in this case, the city is not liable. The construction, maintenance and repair of the street or permitting inert objects to remain therein pertained to the proprietary powers and duties of the city; but such use of the streets as is here involved pertains only to the governmental powers and functions of the city, and the city is not liable. There is here no charge of a breach of a proprietary or corporate duty, nor is there any proof of any breach of any corporate or proprietary duty.

By way of résumé, although somewhat in repetition, let it be noted that the property owner had such an interest in the tree standing in the public parking as that he had a perfect right to cut it down. He had a right to use the street for that purpose. There was no ordinance in the City of Marion either prohibiting or regulating the matter of cutting down trees. Manifestly, if the owner of the tree had cut it down and permitted it to remain as an obstruction to traffic in the street for any considerable period of time, it would have, as such obstruction, constituted a nuisance. The owner, of course, had no right to fell the tree in such a manner as that it would strike anyone in the falling.

In felling the tree, the owner was not violating any ordinance or committing any wrong, unless the felling was negligently done. He had a right to fell it in the street, provided that he, in felling it, did not cause it to fall or permit it to fall so as to injure the person or property of another.

It was just as much the right of the owner of the tree to fell it into the street as it was the right of the owner of the tree to have a truck backed up against the curb so that the tree could be felled into or onto the truck. The mere standing of the truck during the process of felling the tree would, in a sense, constitute a kind of obstruction in the street.

Permitting the tree to remain lying on the paving for the very short time necessary to enable those removing the tree to either cut it into smaller pieces or to attach a truck to it to remove it, or to otherwise remove it, would be an obstruction in the street entirely similar to the obstruction in the street which is caused by the backing up of a truck or van for the loading or unloading of goods or property of any kind. Merely backing up a truck or a van to the sidewalk for the purpose of loading or unloading goods is not negligence, nor is it an improper use of the street in the absence of an ordinance to the contrary, even though the van to some extent obstructs the street.

The felling of a tree onto the pavement not for the purpose of leaving it there, but in the process of removing the tree, is not a violation of any ordinance, nor is it an unlawful obstruction of the street, provided, of course, it is promptly removed.

The negligence in this case consisted of permitting the tree to fall at a time and in such a manner as that it caught Armstrong and the boy in the falling. It was not the cutting of the tree or the felling of the tree into the street that constituted negligence. It was the felling of it into the street at the particular time so that it caught the boy. It was the manner of the cutting that was negligent. In other words, everything the parties did in the matter of felling the tree would have been entirely proper had Armstrong and the boy not been at that particular spot where the tree fell at that particular time. That is to say, had the parties not felled the tree at that particular time and in that particular way so as to catch Armstrong and the boy, there would have been no negligence. The parties who were cutting the tree were mistaken as to the facts. They thought the tree

would stand until after Armstrong got by. Armstrong evidently was of the same opinion. They were all mistaken. Had the tree fallen immediately before or immediately after it did, no harm would have followed and no one would have been guilty of negligence.

Assuming, though not deciding, that notice to the mayor was notice to the City of Marion, all the record shows is that the mayor was notified of the intention of the parties to at some time cut down the tree. No time was specified. The manner in which the tree was to be cut down was not specified. It is true the mayor apparently assumed the tree was to be cut down by permitting it to fall on the pavement, but the mayor had a right to assume that the parties in cutting the tree would do so without negligence. The mayor knew the tree could be cut down without any negligence. He knew the tree could be felled so as not to injure anyone. The felling of the tree was not in and of itself dangerous. Felling the tree was not a nuisance. The mayor had no notice the tree was going to be felled in a negligent manner. The mayor had no notice of any negligence, present or to happen. The mayor had a right to assume that the parties in cutting down the tree would exercise due care to prevent injury to travelers. Holmquist v. Construction Company, 169 Iowa 502; Heller v. Town of Portsmouth, 196 Iowa 104; Parmenter v. City of Marion, 113 Iowa 297.

The absence of notice of any negligence creates the distinction between the case at bar and many of the cases cited by the appellee.

For illustration, in the case of Bliven v. City of Sioux City, 85 Iowa 346, there was a defective bill board near a sidewalk. The city had actual or constructive notice of its defective condition and, therefore, its danger to travelers on the sidewalk. It was negligence on the part of the city to permit the bill board, in that condition, to stand; therefore the city had actual or constructive notice of negligence; while in the case at bar, the mayor had no notice of any negligence. No negligence occurred until the very instant that the parties who felled the tree felled it in such a manner that it fell upon Armstrong and the boy. The mayor had no notice it would be so felled. It could have been safely felled. The parties cutting the tree were not agents of the mayor or the city.

Parenthetically, it may be said that if Armstrong, an adult, were here claiming damages, his conduct disclosed in this case would have clearly constituted contributory negligence preventing him from recovery.

As the mayor had no notice, actual or constructive, of any negligence, the city was under no obligation to undertake to prevent the act of cutting down the tree or to barricade the street where the tree was to be cut down or to place policemen at the entrance to prevent traffic into the street.

As has been stated, the liability of the city in this state is purely statutory. The duty of the city is limited. The statute provides, "It shall cause the same to be kept open and in repair and free from nuisances." This duty relates to construction, maintenance and repair. Manifestly, a municipality cannot be held liable for failure to protect citizens against all accidents occurring on its streets for reasons other than defects therein. The statutory duty pertains to the *quality* or *condition* of the street, but not to the *use that is made of the street*. Making and enforcing ordinances regulating the use of streets brings into exercise governmental powers and not corporate powers, and the authorities are well agreed that for a failure to exercise legislative, judicial or executive powers of government, there is no liability against the city.

Defects and want of repairs as used in statutes generally relate only to inert objects or structural defects, and the municipality cannot be held liable under such statutes for dangers resulting from the negligent or unlawful use of a public highway by a moving object.

In the case at bar, the injury resulted from a moving object. There was no defect or want of repair of the streets, nor was there any nuisance created by any inert object or structure. In substance, the complaint of the plaintiff in this case is bottomed upon the alleged failure of the City of Marion to police the street while the tree was being felled. Manifestly, if there was any failure on the part of the city in that regard, it was a failure of governmental duty and not a failure of a corporate duty.

As previously stated, the mayor had no notice of any negligence. He merely had notice that something was to be done which might possibly be done in a negligent way resulting in

injury to someone. The rule for which the plaintiff contends as against the city would prove disastrous to every organized community.

For illustration, we will assume that the mayor of the City of Des Moines, in coming to his office in the morning, discovers that a telephone company is proceeding with repairs on a certain pole on one of the streets of Des Moines. A new cross-arm is being placed upon a pole. The pole stands near the sidewalk. In elevating the cross-arm to its place and in fastening it to the pole, it may fall and strike a pedestrian on the sidewalk. Or the mayor may see that an old pole is being taken down and a new one is to be put in its place. In the performance of that work either the old pole or the new pole may be so negligently handled that it may fall on a passing automobile on the street, or it may be so negligently handled that it may fall upon a pedestrian on the sidewalk. As the mayor comes to his office, he sees a van backed up in the street to a front sidewalk of a residence. The van is full of furniture. Manifestly, the furniture is to be carried across the sidewalk into the house. It may be so negligently carried as to strike a pedestrian on the sidewalk. The mayor sees a truck standing on a downtown street backed up to a front door of a store. Boxes of goods are to be unloaded from the truck into the store. Those boxes of goods may be negligently handled so as to strike and injure pedestrians on the sidewalk. Many other similar illustrations might be given. Must the mayor in each of those cases proceed to block off the street and prevent traffic, or must the mayor furnish a squad of policemen to protect pedestrians to avoid injury to them, notwithstanding the fact that the mayor has no notice, either actual or constructive, that there is going to be any negligence in connection with any one of those operations? Manifestly, this leads to an absurdity.

Plaintiff's counsel relies on a number of cases which only need passing consideration to show they are not in point, when the distinction between defects and obstructions involving the quality or the condition of the street and the negligent use of the street by some member of the public is considered.

In Nocks v. Town of Whiting, 126 Iowa 405, the defect was a hole in the street. In Stafford v. Oskaloosa, 57 Iowa 748, there was a mound of earth in the street. In Spiker v. Ottumwa, 193 Iowa 844, there was an open trench in the street. In Cooper v.

Oelwein, 145 Iowa 181, the defect consisted of a cement block raised above the level of the sidewalk over which plaintiff tripped. In Edwards v. Cedar Rapids, 138 Iowa 421, plaintiff tripped over a loose board in a sidewalk. In Spurling v. Town of Stratford, 195 Iowa 1002, plaintiff fell into a ditch dug in the street. In Pace v. Webster City, 138 Iowa 107, the injury was caused by a ditch dug across the sidewalk. In Farrell v. City of Dubuque, 129 Iowa 447, the defect was a timber from a frame work built into the street. In Krska v. Pocahontas, 200 Iowa 594, there was a coal hole in the sidewalk. In Ward v. District of Columbia, 24 App. D. C. 524, the officers of the municipality themselves felled the tree in the performance of their duties, and did it so negligently that a person was injured. In Colorado Springs v. May, 20 Colo. App. 204, 77 Pac. 1093, the tree which caused the damage was cut by a city employee in the performance of his duty, and he did so negligently. In Moore v. Townsend, 78 N. W. 880 (Minn.), a 40-foot ladder was set up against a building, the lower end extending over the sidewalk and resting in the gutter. It had stood thus for nearly two weeks when it was blown over onto plaintiff. The case was disposed of on the theory of a nuisance.

Upon the record in this case, there was no allegation or proof of any breach of the proprietary or corporate duty of the City of Marion. For a breach, if any, of its governmental powers, the city was not liable. It follows that the plaintiff cannot recover against the city of Marion.

The defendant Neff complains because of instruction No. 6 given by the court to the jury. In that instruction, the jury were told that the plaintiff, a child of tender years, is relieved of any responsibility for any possible negligence on the part of the driver of the vehicle, Joseph Armstrong, unless the jury find from the evidence that the negligence of said Joseph Armstrong, if any, was the sole and proximate cause of the plaintiff's being injured.

In Raskin v. City of Sioux City, 198 Iowa 865, in which case the plaintiff, at the time of the accident, was a boy about five or six years of age, and while he was riding in an automobile driven by his father, the vehicle was precipitated, as alleged in the petition, by a ditch or depression, resulting in the injury of the boy. This court said, among other things:

"The law of this state is well defined that a child of the age of appellant cannot be held guilty of negligence as a matter of law. The burden to prove freedom from contributory negligence was on the plaintiff; but when he proved that he was six years of age, a *prima-facie* case of freedom from contributory negligence was established. * * * We are committed to the doctrine that negligence of a father cannot be imputed to his child, under the circumstances of the instant case. * * * Briefly stated, the negligence of a father contributing to an accident is available as a defense to his action; but such contributory negligence is no defense in any action by the child for the recovery of damages resulting from injuries to his own person caused by the negligence of a third party. Fink v. City of Des Moines, 115 Iowa 641; Ives v. Welden, 114 Iowa 476; Wymore v. Mahaska County, 78 Iowa 396."

See, also, Stutzman v. Younkerman, 204 Iowa, 1162.

There was no error in the Court's instructions on that question.

III. The defendants jointly offer many complaints in reference to the instructions as a whole and several complaints in reference to specific instructions. These complaints deal largely with the defense of the City.

So far as the defendant Neff is concerned, we have examined each of the instructions carefully, and we reach the conclusion that the record contains no prejudicial error so far as the defendant Neff is concerned.

To enter into a detailed discussion of the various instructions and the complaints made in relation thereto would unduly extend this opinion. Suffice it to say we are satisfied that the defendant Neff had a fair trial.

The negligence of Neff was a question for the jury. The instructions, when read as a whole, fairly and correctly submitted that question. There was sufficient evidence to warrant the submission.

The negligence of Joe Armstrong, if any, was not the sole proximate cause of the account, as Neff contends. There is a dispute in the record as to the warning, if any, given by Neff to Armstrong. On the whole record, which has been carefully considered, we find no cause to disturb the finding against Neff.

As to the appeal of defendant Neff, the case is Affirmed. As to the appeal of the City, the case is Reversed.

FAVILLE, C. J., and ALBERT, DE GRAFF, and MORLING, JJ., concur.

EVANS, STEVENS, WAGNER, and KINDIG, JJ., dissent.

KINDIG, J. (dissenting).—On the 5 day of June, 1929, William Armstrong, while riding with his uncle, Joe Armstrong, in a wagon drawn by two horses, was injured by a tree which fell from the parking into the traveled portion of a public street in Marion. William was but three years old. His Uncle, an adult, was driving the team southward over Thirteenth Street, a public thoroughfare of the city. The tree was a hard maple, which, previous to its falling, had stood on the west side of the street between the paved portion thereof and the sidewalk. It appears that the tree was on the street approximately four feet west of the pavement and about six feet east of the sidewalk. This tree was apparently 20½ inches in diameter.

O. G. Waffle, a defendant, originally owned the lot abutting upon the parking wherein the tree stood. At the time in question, however, the defendant, W. O. Blake, was the owner of the premises under contract or otherwise. In any event, it was the defendant Blake, who contracted with the defendant Delbert Neff and the defendant-appellant James Neff for the removal of this tree.

A portion of the tree-top first had been removed by the defendant Delbert Neff and the appellant James Neff, and then these men sawed near the bottom of the tree until the remainder thereof fell into the traveled portion of Thirteenth Street. That part of the tree which fell was probably about 14 feet in length. Serious and severe injuries were received by William Armstrong, and the plaintiff-appellee brings this action to recover damages therefor.

After a trial to the jury, a verdict was returned in favor of the defendants, O. G. Waffle, W. O. Blake, and Delbert Neff, but in addition thereto the jury found in favor of the appellee, against the appellant James Neff and the defendant-appellant, The City of Marion, Iowa. Consequently James Neff and The City of Marion appeal. Many grounds for reversal are stated by

the appellants. These will be considered now in the order named.

I. Appellants primarily argue that the City of Marion is not liable for the damages sought, because the felling of the tree in no event amounted to a defect in, or obstruction of, the public street. Manifestly appellants' position is without foundation.

Section 5945 of the 1927 Code provides:

"They (cities and towns) shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Under the foregoing section, it repeatedly has been held by this court that it is incumbent upon the city to keep its streets free from obstructions and defects. "Defects" and "obstructions," as thus understood, has been applied not only to depressions or holes in the roadbed and improper objects on the surface thereof, but also to those things above and adjacent to the traveled way which endanger the safety of those properly using the public thoroughfare. Bliven v. City of Sioux City, 85 Iowa 346; Farrell v. City of Dubuque, 129 Iowa 447; Nocks v. Town of Whiting, 126 Iowa 405; Beazan v. Mason City, 58 Iowa 233; Pace v. Webster City, 138 Iowa 107; Wheeler v. Fort Dodge, 131 Iowa 566; Kiple v. Town of Clermont, 188 Iowa 248; Spiker v. City of Ottumwa, 193 Iowa 844; Krska v. Town of Pocahontas, 200 Iowa 594; Spurling v. Stratford, 195 Iowa 1002. Quoted excerpts from the foregoing cases will illustrate the thought. During our discussion in Bliven v. City of Sioux City (85 Iowa 346), supra, (a case involving a billboard on the street), we said:

"It is the duty of a city to keep its streets open and in repair, and free from nuisance. * * * This duty extends, not merely to the surface of the street or walk, but to those things within its control which endanger the safety of those using the street or walk properly. It may not be the duty of a city to open to public travel a given street to its full width, and it may not be its duty to construct a sidewalk thereon; but when it has assumed that obligation, it should make the street and the walk reasonably safe for the uses for which they are intended. A 'defect' is defined to be a want or 'absence of something necessary for completeness or perfection.' Webster's dictionary. It also includes

the idea of a fault or want of perfection. In the statutory sense a street or sidewalk is defective when it is not in a reasonably safe condition for the use for which it is intended. That condition may be due to improper construction, to poor materials, or other causes. It may be due to the presence of something which is a menace to the safety of the users of the way, as well as to imperfect construction or the absence of needed labor or material. In Drake v. Lowell, 13 Metc. (Mass.) 292, the city was held to be liable for damage caused by the fall of an awning which extended over the sidewalk, although the walk under the awning was in good condition.''

Again this court declared in Nocks v. Town of Whiting (126 Iowa 405), supra, (a case involving a defect in the street) :

''That cities and towns are required to keep all streets and public places within their limits, and which are open for public use, free from dangerous obstructions and pitfalls, and in a condition of reasonable repair, is the unquestioned rule of law in this State. And the requirement is broad enough to cover not only the.purposes of public travel, but any use to which the street may be subjected not in itself violative of any established rule of law, and hence improper and illegal. In other words, the duty of the city or town does not end when it has prepared a way over which those engaged in actual travel may pass with convenience and reasonable safety. Having control of the streets and public places, and such having been thrown open to the public use, it owes the further duty to protect users lawfully entering thereon from dangerous defects which in reason should not have been allowed to exist. The principle involved is that which applies to the case of an owner of private grounds who throws the same open to and invites a public use thereof. He may not create a dangerous condition therein, or knowingly continue a created danger, not obvious in its character, and escape liability for injuries resulting therefrom.''

Likewise in Kiple v. Town of Clermont (188 Iowa 248), supra, (a case involving wires across a street), reading on page 250; we stated:

''There is a telephone pole on the south side of (the) * * * street; on the opposite, or north, side, an electric light pole. This

south or telephone pole was about 20 feet high, with a diameter of 5 inches at the top, and about 12 inches at the bottom. * * * Several days prior to the happening of the accident, the mayor, in company with others, stretched (the) * * * wires from the north pole to the south pole over this street. The street was about 60 feet wide. * * * To these wires a banner was attached advertising a Chautauqua meeting to be held in defendant town. * * * Between the time of the accident and the putting up of these wires and this banner, and, we take it, some time before the accident, normally high winds prevailed, and the telephone pole on the south side was found by passers-by to be leaning towards the street. * * * At the time of the accident, this south or telephone pole had become so loosened from its foundation that it leaned towards the street sufficiently to allow these wires to sink or sag, so that the plaintiff and her vehicle did come in contact with them. * * *''

Continuing on page 251, we further said:

''If we assume that the town did not know of this condition, or if we assume, as a matter of law, that the condition that caused the injury had not existed for sufficient time to charge the town with notice, we turn then to a consideration of the causes which led up to and produced the condition which rendered the street admittedly unsafe. This involves a consideration of the duty of the city to exercise reasonable care to anticipate and guard against injuries which may reasonably be expected to flow from those things which the city permits to exist on, beside, or over the street, that do not, undisturbed, immediately make the street unsafe, yet may, through the operation of natural laws or uncontrollable natural agencies on the thing permitted, produce conditions that render the street unsafe; that is, whether the city is liable for a failure to exercise reasonable care to guard the traveler on the street from consequences that may reasonably. be expected to flow from the operation of the elements on the thing permitted. If the defendant permitted the original condition to exist, and, in the exercise of reasonable care, should have anticipated the consequences that might and did follow, then it cannot be heard to complain that it did not have notice that consequences reasonably to be expected did follow; for it is held to know that which it could have anticipated

by the exercise of reasonable care, and could, by such care, have anticipated and guarded against.''

Also similar language was used by this court in Krska v. Town of Pocahontas (200 Iowa 594), supra, (a case involving a defective cover of a coalhole in a sidewalk), reading on page 596:

''The rules of law applicable to the duty of a town or city with respect to the safety of its sidewalks are well settled. It is required to exercise reasonable diligence to maintain them in a reasonably safe condition; and this duty extends, not merely to the surface of the walk, but to those things within its control which endanger the safety of those properly using the walk.''

Thus it is seen that this court, while interpreting Section 5945 of the Code, above quoted, has considered that the legislative language therein set forth is broad enough to include trapdoors, wires across the street, banners extending from one side of the street to the other, billboards, and many other objects. The duty placed upon the municipality, then, is not limited to mere construction or maintenance of the pavement or the roadbed itself. Naturally, the inquiry here is—Does such statutory language include the falling tree, under the facts and circumstances of this case?

A day or two before the tree was sawed down, those interested went to the Mayor of the appellant city and asked for permission to fell the tree. In response to the request for such permission, the Mayor stated that there were no ordinance requirements, and that the applicants could proceed with their undertaking. When so doing, the Mayor told those concerned that notice of the tree's being sawed down should be given the fire department in order that the firemen, in case of a fire, would not drive their vehicles over such portion of the street. Obviously, within the purview of said statute, as interpreted by the authorities above cited and supported by those hereinafter to be noted, the appellant city under the circumstances, in permitting the tree to be felled into the traveled portion of Thirteenth Street, failed to keep the street open and free from nuisances.

Before being sawed down, the tree stood in the parking portion of Thirteenth Street, between the pavement and the sidewalk. It was contemplated by the Mayor, as well as by those

who intended to saw down the tree, that the same should fall in the traveled portion of the street. Therefore, it was imperative that the firemen be so notified. Knowing that a large portion of a hard maple tree would fall from the parking into the traveled portion of the street where passersby might be struck and severely injured or killed, the city the jury could find was not performing its statutory duty under this record unless it stopped the act of felling the tree, which under the circumstances, constituted a nuisance. Under certain conditions, it might not be possible to fell a tree without interfering with travel upon a street, so if the felling of the tree is not to be prevented at least, a barricade should be placed across the street, proper signs put thereon, signals given, or sufficient warning made to the traveling public. The city had authority to do this, even though, under some instances, a lot owner may have a tree on the parking. Such right to have the tree on the parking does not mean that the lot owner has a right to fell that tree in the traveled portion of the street and thereby obstruct the thoroughfare or create a nuisance thereon. Assuming that he may have a right to cut down the tree under proper circumstances, yet it must not fall in the traveled portion of the highway and thereby become a nuisance.

Section 12396 of the 1927 Code, so far as material, provides:

"The following are nuisances: * * * 5. The obstructing or incumbering by fences, buildings, or otherwise the public roads, private ways, streets, alleys, commons, landing places, or burying grounds."

That nuisance, however, may be prevented or abated by the city. In Section 5739 of the 1927 Code, it is declared:

"They (cities and towns) shall have power to prevent injury or annoyance from anything dangerous, offensive, or unhealthful; to cause any nuisance to be abated, and to provide for the assessment of the cost thereof to the property. They may prohibit any public or private nuisance, and may maintain actions in equity to restrain and abate any nuisance."

So, too, Section 5945, previously quoted, demands that the city keep the streets open and free from nuisances. Said statutory duty prevented the city from consenting to the nuisance in

the case at bar. Not only is that true, but also such statute imposed upon the city the duty to keep the street open and free from nuisances. Under the circumstances, the municipality in question had power to prevent the nuisance in the first place, or abate it after it was created. Section 5945 of the 1927 Code, before set forth, imposing upon the city the power and duty to keep streets open and free from nuisances, is not limited, as previously suggested, to the surface of the highway, but extends as well to conditions over the same and adjacent thereto. Application of that doctrine has been made in the foregoing cases to situations where wires were stretched across streets, or banners hung from one building to another, etc. Then any defect on the surface is not the only obstruction or nuisance covered by the statute, but that legislation includes an object overhead as well.

Consequently, said hard maple tree, when falling, as well as when resting upon the surface of the street, was an obstruction, and by permitting such felling of the tree the city did not keep its streets open and free from nuisances, as required by the statute. No prevention or abatement of the nuisance was attempted. There is support for appellee's contention that the street was not barricaded. Likewise, there is evidence to the effect that the city gave no warnings, signs, or signals of any kind regarding the imminent danger from the falling tree. Conflicting evidence appears concerning whether the driver of the team and wagon was notified. Therefore it was for the jury to make a finding of the facts. That body discharged this duty, and we cannot interfere with the result.

Other courts have considered the subject now under review and their conclusions are consistent with the suggestions made in our own opinions. The Massachusetts Court, in Valvoline Oil Company v. Inhabitants of Town of Winthrop, 126 N. E. 895, declared on page 897:

"There was evidence that the plaintiff while in the exercise of due care was traveling in a proper wagon which came in contact with the limb that in the course of time had grown over the traveled part of the way so near the surface of the street that it could be found to be an obstruction to persons traveling thereon. In these circumstances the limb could be found to be a defect which it was the duty of the town to remedy. While many cases

have been considered by this court involving injuries to travelers on a highway caused by trees standing within the limits of the way, most of them have arisen because of the decayed condition of such trees. Nestor v. Fall River, 183 Mass. 265, 67 N. E. 248; * * * Yet we are of opinion that there is no sound distinction between the liability of a city or town for failure to guard against defects caused by trees within the limits of a highway which are old and decayed, and those which, although sound, in course of time cause a defective condition on a highway by growth. Anything in the state or condition of a highway which renders it unsafe for ordinary travel is a defect or want of repair.''

So, too, the Kentucky Court, in City of Louisville v. Michels, 71 S. W. 511, suggested:

''It is the duty of a municipal corporation to maintain its streets in good condition and repair, so as to keep them reasonably safe for the traveling public. This imposes the duty of keeping them clear of obstructions which are dangerous to persons using them, and for failure to do so it is liable in damages to one who may be injured in consequence of such obstructions. This limb (the one in the Louisville case) was six or eight inches in diameter, and necessarily it had been an obstruction for some years.''

Upon this same subject, the appellate court of Indiana, in City of Indianapolis v. Slider, 105 N. E. 56, stated:

''It is the duty of the city to keep the streets and sidewalks in a safe condition for use. Those who use the streets and sidewalks have a right to rely on the performance of this duty by the city, and they are not required to inspect them to see that they are safe for use. The fact that a casual passerby did not discover that a pole or tree which the city permitted to stand by the curb was rotten and dangerous would not conclusively establish the fact that such dangerous condition could not and should not have been discovered by the officers of the city, whose duty it was to keep the streets safe. * * * It has been held that the duty of a city in respect to keeping the streets safe is not limited to the surface thereof, but that it extends upward so as to impose a liability in favor of one using the street, occasioned

by the falling of a defective cornice which the city had permitted to project over the sidewalk from an adjoining building. Grove v. City of Ft. Wayne, 45 Ind. 429, 15 Am. Rep. 262. No reason has been suggested why the same rule should not require the city after notice to remove a dead and rotten tree standing within the limits of the street.''

To the same effect see Chase v. City of Lowell, 24 N. E. 212 (Mass.); Embler v. Town of Wallkill, 30 N. E. 404 (New York); Wright v. City of Chelsea, 93 N. E. 840 (Mass.); Donahue v. City of Newburyport, 98 N. E. 1081 (Mass.); McGarey v. City of New York, 85 N. Y. S. 861; Moore v. Townsend, 78 N. W. 880 (Minn.); Lundy v. City of Sedalia, 144 S. W. 889 (Mo.); Colorado Springs v. May, 77 Pac. 1093 (Colo.).

Appellants argue that the case at bar is no different in its facts than the circumstances presented by Parmenter v. City of Marion, 113 Iowa 297. In that case there was built, over the sidewalk, a platform 15 feet in length and 5 feet wide. A bail of hay was negligently permitted to fall from the platform on a pedestrian in the street below. When discussing the merits of that controversy, we concluded that the city could not anticipate the negligence of the man who carelessly permitted the hay to fall. Clearly that case is distinguishable from the present controversy. There the injury to the pedestrian was not caused by the falling platform or any other structure, but rather by the negligence of one who was moving a bail of hay on the platform. That negligence was the proximate cause of the injury. While the platform was being properly used, there was no danger, for that structure did not fall; but in the case at bar the very enterprise contemplated that the tree should fall in the traveled part of the highway. Necessarily that event would injure a traveler who happened to be in the way. Therefore, here the proximate cause of the injuries received by the child, William Armstrong, was the negligence of the city in permitting the tree to be felled without barricades or proper warning signs on Thirteenth Street to keep travelers from the dangerous portion thereof.

Travelers upon Thirteenth Street could not be protected from the danger created by the falling tree unless the public thoroughfare was barricaded, or effective and proper notice given in such a way as to keep the traveling public from that portion of the

highway. Of course, the individuals who were sawing down the tree could not barricade the public street. Such barrier upon the public street could be placed by the city only, or at least by someone with the city's consent. Also a sufficient and effective warning sign, which, of itself would constitute an obstruction in the street and a barrier to public travel, could not be placed without the city's permission. At least, it is clear, under the circumstances, that the city did not, and had no right to, rely upon those cutting down the tree to barricade the street or otherwise place prominent signs or signals thereon, in order to keep the traveling public from the imminent danger involved. Furthermore, it is evident that the city did not even expect those engaged in felling the tree to place a barrier across the street or put other prominent signals or signs thereon, because the municipality asked that the applicants for permission to saw down the tree give personal warning to the fire department in order that the firemen would not drive up that street.

Other cases are cited by the appellants, but they all are easily distinguishable from the facts involved in the case at bar. Under the facts and circumstances disclosed by the record, the cause was properly submitted to the jury. It was for that body to say whether the city exercised the required care in protecting the traveling public from the falling tree. Likewise it was the duty of the jury to determine the facts relating to the proximate cause of the injury received by William Armstrong.

II. Notwithstanding the statute above quoted, it is necessary that the city have knowledge or notice of the dangerous condition in time to remedy the same before an accident. After such notice, the city is entitled to reasonable time in which to remedy the defect. This is the ordinary rule. Spiker v. The City of Ottumwa, 193 Iowa 844; Cooper v. Oelwein, 145 Iowa 181; Farrell v. City of Dubuque, (129 Iowa 447), supra.

Here, however, the city had actual notice of the contemplated obstruction of the street a day or two before the tree had fallen. Such notice was ample. The notice here under discussion was given to the Mayor of the municipality by those who intended to cut down the tree. Appellants declare that the Mayor is not a member of the city council, and therefore has no duty relative to the maintenance and repair of streets. Section 5639 of the 1927 Code, among other things, provides:

"In cities and towns, the mayor shall have powers and perform duties as follows:

"1. * * * He shall be the chief executive officer thereof, and it shall be his duty to enforce all regulations and ordinances; * * *

"5. He shall be the presiding officer of the council with the right to vote only in case of a tie."

When discussing notice to city officers, we said in Cook v. The City of Anamosa, 66 Iowa, 427, reading on page 429:

"The city would undoubtedly have been affected by any notice of the defect given to its mayor, for he is its executive officer, and is clothed with general executive powers."

Again, we said in Shinnick v. City of Marshalltown, 137 Iowa 72, reading on page 73:

"It (the city) became chargeable with notice of the nuisance, if not responsible therefor, when it was erected, because notice to its chief executive officer was notice to it."

See also Pace v. Webster City (138 Iowa 107), supra.

Notice therefore was given to the city in sufficient time to prevent the dangerous condition of the street or properly barricade the public thoroughfare in such a way as to protect the traveling public. Reliance is made by appellants at this juncture upon Edwards v. Cedar Rapids; 138 Iowa 421, and Hoyt v. Des Moines, 76 Iowa 430. But those cases are not in point for the officers therein named were not general executive officers. Here, however, in the case now before us, the mayor was the chief executive officer, and therefore was the proper person to receive notice on behalf of the city. The information was imparted to him in his official capacity, and therefore the city is bound by the notice.

III. Further argument is made by the appellants at this point to the effect that although the statute above quoted contains the provisions therein set forth, and the city did have notice of the dangerous condition to be created on Thirteenth Street, yet there can be no recovery by appellee because the city's functions in the premises were purely governmental. If the duty of the city in the case at bar was no more than govern-

mental, then, of course, the municipal corporation is not liable in damages for the torts of its officers. Leckliter v. City of Des Moines, 211 Iowa 251; Norman v. Chariton, 201 Iowa 279; Harris v. City of Des Moines, 202 Iowa 53. As was said in the Norman case, supra:

"It is a matter of universal judicial recognition that a municipality possesses and may exercise two classes of powers. The one is governmental in character, where, generally speaking, it acts as a sovereign, in government and control of its inhabitants and in their interest generally. The other is proprietary, ministerial, and, we have said, quasi private, where it acts for the private advantage of the inhabitants of the city, and in some measure for the city itself."

Then, if the power of the appellant City is proprietary or ministerial in character, as distinguished from governmental, there may be a liability for negligence. Concerning this, we further said in the Norman case, supra:

"That a municipal corporation is liable for an injury caused by a defect negligently permitted in its streets has long been the settled doctrine of this state. The liability has been predicated upon, or said to arise from, the power given by statute to improve the streets. * * * It was held at an early day that, the city council having directed a public improvement, 'the further prosecution of it is purely of a ministerial character,' and that, 'where the work is purely ministerial, the corporation is subject to the same rules which govern the individual.' "

Under the foregoing statute, the public streets in a city must be kept open and free from nuisances. By a long line of decisions, cited in Division I. above, this court has repeatedly held that the statute in question imposes upon the city proprietary or ministerial powers which are distinguishable from those purely governmental. This statute, therefore, removes the city from the realm of protection on the theory of governmental function and places it over into the sphere of personal liability under the principle of ministerial or proprietary duties. When the statute applies, the governmental function doctrine is not available to the city as a defense.

IV. But it is further contended that the city is not liable

because the only failure on its part, if any, was to properly police the streets and furnish protection for the travelers thereon. Such failure of the municipality, it is argued, does not create a liability for damages. Authority for this contention, it is said, appears in Reinart v. Town of Manning, 210 Iowa 664; Ball v. Woodbine, 61 Iowa 83; Remy v. City of Shenandoah, 184 Iowa 1370; Heller v. Portsmouth, 196 Iowa 104. Of course, the city had a duty to prevent or abate a nuisance, as before suggested, but assuming that such nuisance was not prevented or abated, then there was the duty to barricade, warn, etc. The cases last above cited involve actions against the city, to recover damages, by persons who were injured upon the streets through the explosion of fire crackers, anvils, etc. Manifestly, a review of our decisions will demonstrate that we always have made a distinction between the last-named cases, concerning explosives, and those under the above-named statute. Reinart v. Town of Manning, 210 Iowa 664; Wheeler v. Fort Dodge, 131 Iowa 566. A difference always has been recognized between the cases of non-liability for injuries caused by fireworks and other explosives, and the decisions placing responsibility upon the municipality because of its failure to keep a street open and free from nuisances under the statute. For instance, in an early discussion of this subject, we said in Ball v. Woodbine (61 Iowa 83), supra:

"The most that can be claimed from the averments of the petition, and what the pleader evidently intended to charge, was, that the town, by its failure to prevent the dangerous display (fireworks), was a party thereto. We think the facts show no more than a violation of an ordinance of the town, in which violation the officers of the town were active participants. It is well settled that cities and towns are liable for damages occasioned by obstructions negligently allowed to remain in the public streets of the corporation, and the like, and the authorities cited by counsel for appellant are actions for injuries of this character. These cases are founded upon the principle that the city, in the exercise of its municipal authority over public places, is guilty of negligence in the discharge of a duty within the scope of its powers."

Again, in Wheeler v. City of Fort Dodge (131 Iowa 566), supra, there was involved the liability of a city for injuries

caused a woman upon a street by a performer who fell from a wire extending across the public way. While discussing this subject, we said in that case:

"Under the rule of these cases (Farrell v. Dubuque, 129 Iowa 477, and the other decisions set forth in Division I of this opinion), and of the great weight of authority in general, we regard it clear that the court was in error in holding as a matter of law that no negligence had been shown on the part of the appellee (the city). Whether or not a given structure in the street obstructs, or may obstruct, the public use or safety, is always under ordinary circumstances a jury question. * * * The conclusion as here reached is in no manner inconsistent with the decision in Ball v. Woodbine, 61 Iowa 83, where we held the city not liable for the act of its officers in discharging fireworks or failing to prevent such discharge by which the plaintiff was injured. The essence of the complaint in that case was either the personal misconduct of certain persons who happened to be officers, or the failure of such officers to properly police the city, and for such failure the cases are quite uniform in holding the city not subject to a claim for damages. *In the case at bar the cause of action is nuisance created and existing in the streets by the neglect or wrongful act of the city in violation of its express statutory duty to keep its streets open and free from nuisances.*" (The italics are ours.)

Consequently, it is apparent that the governmental function rule and the police duty doctrine, above discussed, do not apply when the negligence of the city arises from its failure to comply with the foregoing statute. Concluding, as we did in Division I above, it was for the jury to say whether or not, under the instructions, the city violated the statutory mandates. I would affirm.

Justices EVANS, WAGNER and STEVENS, JJ., join in the dissent.